IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANGELEE HARDY,<br><br>                     Plaintiff,<br><br>v.<br><br>FARMERS INSURANCE EXCHANGE,<br>                     Defendant. | **ORDER AND MEMORANDUM DECISION GRANTING MOTION TO DISMISS**<br><br>Case No. 2:21-cv-00619-TC-DBP<br><br>District Judge Tena Campbell |

Before the court in this employment discrimination case is Employer-Defendant Farmers Insurance Exchange's (Farmers) Motion to Dismiss Employee-Plaintiff Angelee Hardy's Second Amended Complaint (SAC).   Mot. Dismiss, ECF No. 13.   Ms. Hardy opposes the motion, Mem. Opp. Mot. Dismiss, ECF No. 20, and Farmers has replied in support of dismissal, Reply Supp. Mot. Dismiss, ECF No. 21.   Farmers argues Ms. Hardy's discrimination and retaliation claims should be dismissed as largely time barred and because she failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) and DUCivR 7-1.   The court agrees and dismisses both claims.

**I.**   <u>**Background**</u>

Ms. Hardy claims she experienced gender-based discrimination and harassment while employed at Farmers and brings a cause of action against Farmers for gender-based discrimination. SAC, ECF No. 9 at ¶¶ 80–91.   She also alleges Farmers retaliated against her for reporting the abusive behavior and brings a cause of action against Farmers for retaliation.   <u>Id.</u> at ¶¶ 92–103.

   a.   <u>Ms. Hardy's Gender-Based Discrimination Claim.</u>

Ms. Hardy used to work as a Claims Associate for Farmers; she was hired into the role on April 24, 2006, and she departed Farmers on March 22, 2021.   <u>Id.</u> at ¶¶ 11, 76, 98.   She alleges

that during her employment at Farmers she was subjected to discrimination and harassment based on her gender.  Id. at ¶ 12.  Her Second Amended Complaint focuses on events after 2015, which is when Farmers relocated its office to Sandy, Utah, and implemented a policy requiring employees to use individual security access badges to enter the office; many employees failed to do so and instead asked Ms. Hardy and her male colleague Jeremy to let them in, and "some [Farmers] employees began behaving intentionally to intimidate specifically her."  Id. at ¶¶ 13–15.

The court does not recite all the events that are alleged to have occurred after the badge policy was put in place, but Ms. Hardy says she repeatedly reported the issues related to the policy and her coworkers' associated treatment of her to management.  Id. at ¶¶ 16–18, 24–27, 31, 33, 39, 41, 44–45, 50, 55–57, 60, 66.  In doing so she labeled her colleagues' behavior as harassment. E.g., id. at ¶¶ 25, 27, 31, 33, 39.  Farmers neither granted her request to be removed from involvement in the access badge situation (apart from a brief period after which she was forced back into it), nor addressed its employees' intimidating behavior towards Ms. Hardy.  Id. ¶¶ 29, 57–59.  Rather, her coworkers' behavior continued.  Among other things, male office employees "fiercely" and "angrily" yelled at Ms. Hardy and made her feel unsafe, coworkers made mocking comments, left her desk disorderly, told her to "not come back" when she left on breaks, and one said "can I harass you, it's actually just a favor."  See, e.g., id. at ¶¶ 19–21, 30, 57, 60–65.

The gender-based nature of her claim seemingly rests on her allegation that she was treated differently than her male colleague Jeremy, who was not subject to intimidating and rude behaviors.  Id. at ¶ 22, 89.  She explains the discrepancy by asserting that "Because [she] is female, employees viewed her as weak and were more comfortable making demands and exerting power over her than toward her male counterpart, Jeremy."  Id. at ¶¶ 23, 89.

2

     b.  <u>Ms. Hardy's Retaliation Claim.</u>

Ms. Hardy also brings a retaliation claim against Farmers.  She alleges she suffered multiple adverse actions after she reported to Farmers that she was being harassed by her coworkers and lists examples where her management penalized her for reporting the harassment. Among other things, she says she was penalized by her manager, Tanya Fisher, who gave her poor performance reviews and performance warnings that did not accurately reflect her contributions. <u>Id.</u> at ¶¶ 33, 77.  She alleges this type of retaliation occurred from at least 2017 until her 2020 mid-year review.  <u>See, e.g.</u>, <u>id.</u> at ¶¶ 33, 40, 46–47, 49–51, 53–54, 66, 68.  Ms. Hardy also alleges that, among other things, because of her complaints her workload was increased,[1] she received higher performance expectations, and she was subject to increased scrutiny.  <u>Id.</u> at ¶¶ 38, 66, 69.

Finally, Ms. Hardy asserts that Farmers retaliated by terminating her employment.  <u>Id.</u> at ¶ 79.  She asserts it was her supervisors' intention to terminate her as far back as 2017, <u>id.</u> at ¶¶ 33, 53,[2] and that in 2020, she was "intentionally excluded from work assignments in an apparent effort to remove her from her job," <u>id.</u> at ¶ 69.  She says the explanation she was given for her separation from Farmers—that her position was "eliminated due to a reorganization"—was pretext.  <u>Id.</u> at ¶¶ 73, 79.  What really happened, she says, was that Farmers "exploited the opportunity to terminate [her] employment under the pretext of a reorganization, especially considering the significant staffing reduction already implemented companywide and within [her] operating zone, the declarations by [Ms. Hardy]'s manager that the outcome of [Farmers'] voluntary separation program had sized the company 'just right,' and the announcement of

---

[1] Elsewhere she alleges retaliation came in the form of being excluded from work.  <u>Id.</u> at ¶ 69.
[2] She also says that in December 2017 "Human Resources was protecting [her] job from being fired regarding the circumstances of [Ms. Hardy's] disciplinary action."  <u>Id.</u> at ¶ 37.

increased staffing to property claims" which came three days before Ms. Hardy's final day at Farmers.  Id. ¶¶ 75, 79.  She asserts the adverse actions she experienced—including negative performance reviews, changing workload, increased scrutiny, and her termination—were unlawful retaliation against protected action, specifically, her reports of harassment at the hands of her coworkers.  Id. at ¶¶ 35, 92–103.

## II.   <u>Analysis</u>

Farmers moves to dismiss Ms. Hardy's claims.   <u>See</u> Mot. Dismiss, ECF No. 13.   It argues her claims are, for the most part, time barred, and that Ms. Hardy failed to state a claim for either discrimination or retaliation.   Id.   Looking at the discrimination claim, the court agrees it is time-barred.   But for the retaliation claim, the same is only partially true.   To the extent her claim is for retaliation that occurred before the 300-day look-back period it is time-barred, but to the extent it is for retaliation that occurred during the look-back period, it is not time-barred.   The court, however, dismisses the remainder of Ms. Hardy's retaliation claim for failure to state a claim under Rule 12(b)(6).

### a.   <u>Ms. Hardy's Discrimination Claim Is Time-Barred, As Is Much of Her Retaliation Claim.</u>

"In states in which a state agency has authority to investigate employment discrimination ('deferral states'), Title VII requires claimants to file a charge of discrimination within 300 days of the alleged unlawful employment practice.   Utah is a deferral state."  <u>Rogers v. Morris</u>, No. 2:11-CV-134, 2012 WL 1802449, at *1 (D. Utah May 17, 2012) (quoting <u>Davidson v. Am. Online, Inc.</u>, 337 F.3d 1179, 1183 n.1 (10th Cir. 2003)).   "Every instance of retaliation and/or disparate treatment is an independent 'unlawful employment practice.'"   <u>Id.</u> (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 114 (2002)).   For each instance alleged, a plaintiff

must show it occurred and was identified in the charge within the 300-day period, or their claim based on the instance is time barred.   Id. (citing Morgan, 536 U.S. at 114).[3]

On June 15, 2021, Ms. Hardy filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC).   SAC, ECF No. 9 at ¶ 4.   She argues that because she alleges a continuing violation, the court may consider all non-discrete events occurring before "300 days from the date of filing of June 15, 2021, which continued past the beginning of that . . . 300-day look-back period."   Id. at ¶ 7.   But "the continuing violation doctrine . . . does not apply to claims involving disparate treatment or retaliation," Brown v. Lowe's Home Ctrs., 627 F. App'x 720, 725 (10th Cir. 2015) (citing Martinez v. Potter, 347 F.3d 1208, 1210–11 (10th Cir. 2003)) (unpublished)[4], and Ms. Hardy states that her claim is a disparate treatment claim, not a hostile work environment claim, Mem. Opp. Mot. Dismiss, ECF No. 20 at 8, 9.   Because the continuing violation doctrine applies to neither disparate treatment nor retaliation claims, in assessing her claims the court may not consider events that occurred past the beginning of the 300-day look-back period that ended when Ms. Hardy filed her Charge of Discrimination on June 15, 2021, and began on August 19, 2020.[5]

---

[3] Viewing facts in the light most favorable to Ms. Hardy, the court—like Farmers—assumes the 300-day deadline applies even though Ms. Hardy did not initially her grievance with both the Utah Labor Commission and the EEOC.   See Mot. Dismiss, ECF No. 13 at 16 n.2.

[4] Unpublished decisions are cited for persuasive value.   Fed. R. App. 32.1; DUCivR 7-2(a)(2).

[5] Ms. Hardy claims the look-back period started 300 days before February 9, 2021, when she submitted an online inquiry to the EEOC.   Mem. Opp. Mot. Dismiss, ECF No. 20 at 5.   This is incorrect.   The 300 day-period is triggered by filing a charge of discrimination, not any contact with the EEOC.   See Rogers, 2012 WL 1802449, at *1 (observing "Title VII requires claimants to file a charge of discrimination within 300 days of the alleged unlawful employment practice," and as "Plaintiff's charge was filed with the EEOC on July 8, 2008[, a]ny incident on which a claim could be predicated must therefore have occurred on or after September 12, 2007.").

Ms. Hardy was notified of her termination on January 21, 2021, and her last day at Farmers was March 22, 2021.   SAC, ECF No. 9 at ¶¶ 73, 76.   Her termination occurred during the look-back period.   But this does not save the discrimination claim because she alleges the termination was retaliation, not discrimination.   See Mem. Opp. Mot. Dismiss, ECF No. 20 at 12–13.   She alleges no other conduct that occurred during the look-back period and could be seen as gender-based discrimination.   Since the court cannot consider disparate treatment claims for conduct that occurred outside the 300-day look-back period, and Ms. Hardy disclaimed the termination as an instance of discrimination, Ms. Hardy's discrimination claim is dismissed without prejudice.

Because the continuing violation doctrine does not apply to claims involving retaliation, Lowe's Home Ctrs., 627 F. App'x at 725 (citing Martinez, 347 F.3d at 1210–11), the court dismisses, with prejudice, Ms. Hardy's retaliation claim as it relates to adverse employment actions that occurred outside of the look-back period.   But her retaliation claim is not dismissed as it relates to her termination or any other retaliatory events that occurred within the look-back period.

   b.   Ms. Hardy's Retaliation Claim as to Adverse Employment Actions that Occurred within the Look-Back Period is Dismissed for Failure to State a Claim.

While Ms. Hardy's retaliation claim is not entirely time barred, because she has not plausibly alleged that she engaged in a practice that Title VII protects from retaliation,[6] she has failed to state a claim for retaliation and the court dismisses the remainder of this claim without prejudice.

---

[6] In addition to her termination, Ms. Hardy asserts she was removed from work assignments. SAC, ECF No. 9 at ¶ 69.   It is unclear whether the latter occurred after August 19, 2020.   But as the court dismisses the retaliation claim on element one of the retaliation analysis (protected opposition), the timing of this alleged action does not impact the court's holding as to this claim.

"[A] pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"   Khalik v. United Air Lines, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).   "[T]he Supreme Court clarified this pleading standard in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009): to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'"   Id. (quoting Twombly, 550 U.S. at 570).   In assessing a motion to dismiss, courts "assume the veracity of well-pleaded facts . . . 'then determine whether they plausibly give rise to an entitlement to relief.'"   Morman v. Campbell Cnty. Mem'l Hosp., 632 F. App'x 927, 932 (10th Cir. 2015) (quoting Iqbal, 556 U.S. at 679) (unpublished).   "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." Khalik, 671 F.3d at 1191 (quoting Twombly, 550 U.S. at 555).   "While the 12(b)(6) standard does not require that [Ms. Hardy] establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether [she] has set forth a plausible claim," consequently, the court starts its Rule 12(b)(6) analysis by discussing the elements Ms. Hardy must prove to establish her Title VII retaliation claim.   Id. at 1192.

An employer may not retaliate against an employee who opposes an employment practice Title VII makes illegal.   See 42 U.S.C. § 2000e–3(a).   A "Plaintiff's retaliation claim is not dependent upon the viability of her . . . discrimination charges."   McDonald v. Corrs. Corp. of Am., 181 F. Supp. 2d 1274, 1281 (D.N.M. 2002).   So, the failure of Ms. Hardy's discrimination claim does not also doom her retaliation claim.   To establish a prima facie case of retaliation a plaintiff must show (1) she engaged in protected opposition to discrimination; (2) she suffered a materially adverse employment action; and (3) there is a causal connection between (1) and (2).

7

Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1181 (10th Cir. 2006).   In pleading a claim under Title VII, a plaintiff need not set forth a prima facie case, "[b]ut she must allege facts that make such a claim at least plausible."   Morman, 632 F. App'x at 933.   Here, "only the first and third elements are in dispute; [an employer] . . . could not[] contest the intermediate question whether a reasonable employee would find the termination of his or her employment to be materially adverse."   Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1202 (10th Cir. 2008).

Looking at the first element, protected opposition, Ms. Hardy pleads facts establishing that for years she reported her harassment.   E.g., SAC, ECF No. 9 at ¶¶ 25, 27, 31, 33, 39.   In doing so she used "hostile" to describe her work environment and "harassment" to describe the behavior she was enduring, and she did so in conversations with management and Human Resources, and in her year-end reviews.   See, e.g., id. at ¶¶ 27, 31, 33, 39, 41, 50.   She told others at Farmers of the existence of a disparity between how and she and a colleague (her male colleague Jeremy) were being treated by their coworkers.   Id. at ¶ 56.   She also complained of retaliation.   See id. at ¶¶ 50–51.

This form of complaint can qualify as protected activity.   "Informal complaints to superiors constitute protected activity," O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1255 (10th Cir. 2001), and hers were made through her performance review process, and in meetings with managers and human resources staff.   But Ms. Hardy has not alleged facts that would support a plausible inference that she reported, or even implied, to anyone at Farmers that the harassment she was complaining about was in violation of Title VII.   This is because she did not indicate to Farmers that the harassment or disparity in her treatment as compared to Jeremy's was due to, or connected to, her gender (or another protected status).

Ms. Hardy contends that when she started using the term "harassment" in her complaints, her actions crossed the line into protected activity.   Mem. Opp. Mot. Dismiss, ECF No. 20 at 13. Tenth Circuit caselaw does not support this position.   For example, in considering a retaliation claim in a case where race-based discrimination allegedly occurred, the Tenth Circuit observed that "a vague reference to discrimination and harassment without any indication that this misconduct was motivated by race (or another category protected by Title VII) does not constitute protected activity and will not support a retaliation claim."   Anderson v. Acad. Sch. Dist. 20, 122 F. App'x 912, 916 (10th Cir. 2004) (unpublished); see also Petersen v. Utah Dep't of Corrs., 301 F.3d 1182, 1188 (10th Cir. 2002) (observing retaliation claim was "problematic" where plaintiff did not mention racial or religious discrimination, and concluding the absence of a reference to unlawful discrimination can preclude a plaintiff's retaliation claim "because an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII.").   District courts within the Tenth Circuit have held similarly.   See, e.g., Holloway v. Fremont Cnty. RE-1, Canon City High Sch., No. 19-CV-03665, 2022 WL 227239, at *7 (D. Colo. Jan. 26, 2022), R. & R. adopted sub nom. Holloway v. Freemont Cnty. RE-1/Canon City High Sch., 2022 WL 910706 (D. Colo. Mar. 28, 2022) (holding plaintiff's resignation letter was not protected activity that could support a retaliation claim where the letter contained only a vague allegation of supervisor's "bias" against plaintiff, did not mention race/nationality discrimination or other unlawful employment practice under Title VII, and where coworker denied ever hearing plaintiff claim she was being unlawfully discriminated against on the basis of her race/national origin).

Here, Ms. Hardy has not pleaded facts that plausibly show she engaged in protected activity when she told her employer about "harassment" and "retaliation," or about her colleagues treating Jeremy differently.   She does not allege that she told Farmers the maltreatment was because of, or related to, her gender.   She similarly did not convey her alleged belief that the better treatment received by Jeremy was proof of the gendered nature of, or motivation for, the maltreatment she received.   Even if she had a reasonable, good faith belief that the practice she opposed violated Title VII—and for the purposes of this motion the court assumes she did—by using the word "harassment" but failing to connect it to a protected status, she did not convey to Farmers her concern that its employees had engaged in an unlawful employment practice under Title VII.   So even if Farmers retaliated against her for her complaints, the complaints were not protected activity under Title VII; consequently, the retaliation was not unlawful.   <u>Anderson</u>, 122 F. App'x at 916.

Ms. Hardy asks, "if an employee complains of 'harassment', is that enough to constitute engaging in protected activity?"   Mem. Opp. Mot. Dismiss, ECF No. 20 at 13.   The answer is "no."   "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by" employment discrimination statutes.   <u>Hinds</u>, 523 F.3d at 1203.   Ms. Hardy failed to plead facts that allow for the plausible inference that she did so in her complaints to Farmers. As a result, her retaliation complaint is dismissed without prejudice.

## III.   <u>Order</u>

Based on the above, the court **ORDERS** that the Motion to Dismiss is GRANTED.   The court DISMISSES the case:

(i)   Ms. Hardy's discrimination claim is dismissed without prejudice;

(ii)  Ms. Hardy's retaliation claim is dismissed with prejudice for any adverse employment actions that may have occurred before the 300-day look-back period;

(iii)  Ms. Hardy's retaliation claim is dismissed without prejudice for any adverse employment actions that may have occurred during the 300-day look-back period.

Farmers argues Ms. Hardy's claims should all be dismissed with prejudice as amendment would be futile.   Reply Supp. Mot. Dismiss, ECF No. 21 at 7.   While Ms. Hardy has already amended her complaint twice, see Compl., ECF No. 2; Am. Compl., ECF No. 3, the court cannot assess futility without a proposed pleading, see Castanon v. Cathey, 976 F.3d 1136, 1144 (10th Cir. 2020).   Accordingly, the court ORDERS that Ms. Hardy may file a motion for leave to amend her Second Amended Complaint by February 13, 2023.   Any such motion must comply with DUCivR15-1, e.g., the proposed pleading and a redline must be included with the motion.

DATED this 23rd day of January, 2023.

BY THE COURT:

TENA CAMPBELL
United States District Judge

11