IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANGELEE HARDY, <br><br> Plaintiff, <br> v. <br> FARMERS INSURANCE EXCHANGE, <br><br> Defendant. | **ORDER AND MEMORANDUM DECISION DENYING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** <br><br> Case No. 2:21-cv-00619-TC-DBP <br><br> District Judge Tena Campbell <br> Magistrate Judge Dustin B. Pead |

Before the court is Plaintiff-Employee Angelee Hardy's Motion for Leave of Court to File Third Amended Complaint. (ECF No. 26 ("Mot. File TAC")). The Defendant-Employer in this employment discrimination action, Farmers Insurance Exchange (Farmers), opposes the motion. (Opp. Mot. File TAC, ECF No. 34).[1] Having considered the parties' arguments and the proposed pleading, (Pl.'s (Proposed) Third Am. Compl., ECF No. 26-2 ("TAC")), the court denies Ms. Hardy's motion on the grounds of undue delay and futility of amendment.

## DISCUSSION

### I. Background[2]

In her Third Amended Complaint (TAC), as in her Second Amended Complaint (SAC), Ms. Hardy claims she experienced gender-based discrimination and harassment while employed at Farmers and she brings a cause of action against Farmers for gender-based discrimination. (TAC ¶¶ 80–91, ECF No. 26-2; <u>see also</u> SAC ¶¶ 80–91, ECF No. 9). She also alleges now, as

---

[1] Ms. Hardy did not file a reply in support of her pending motion.
[2] Having described Ms. Hardy's history at Farmers at length in its previous Order, (Order, ECF No. 25), the court will not again recite all the events that led to Ms. Hardy filing this action. The facts alleged and arguments made are discussed herein as they are relevant to the motion at hand.

she did before, that Farmers retaliated against her for reporting the abusive behavior and she brings a cause of action against Farmers for retaliation. (TAC ¶¶ 92–103; SAC ¶¶ 92–103).

On September 30, 2022, Farmers moved to dismiss Ms. Hardy's claims. (Mot. Dismiss, ECF No. 13). On January 23, 2023, the court granted Farmers' motion and dismissed both of Ms. Hardy's claims. (Order, ECF No. 25). The court did not enter judgment at that time. Instead, it allowed Ms. Hardy to file a motion seeking leave to file an amended complaint. Id. Ms. Hardy's motion requesting this leave is now before the court. (Mot. File TAC, ECF No. 26).

**II.   Analysis**

A pleading may be amended under Rule 15(a)(1) "'once as a matter of course' within 21 days after (A) serving the pleading or (B) service of a responsive pleading or preresponse motion. When, as here, Paragraph 15(a)(1) does not apply, a party may amend only with the opposing party's written consent or the court's leave." Pacheco v. Habti, 62 F.4th 1233, 1240 (10th Cir. 2023) (citing Fed. R. Civ. P. 15(a)(2)). Farmers does not consent. (Opp. Mot. File TAC 11, ECF No. 34). So, Ms. Hardy requires the court's leave to file her amended pleading.

   a.   Legal Standard.

Courts "should freely give leave [to amend] when justice so requires." Pacheco, 62 F.4th at 1240 (quoting Fed. R. Civ. P. 15(a)(2)).[3] "The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits." Calderon v. Kansas Dep't of Soc. & Rehab. Servs., 181 F.3d 1180, 1186 (10th Cir. 1999). But "This policy is not limitless." Id. "[A] district court may deny a motion to amend for reasons such as undue

---

[3] Once judgment is entered "the filing of an amended complaint is not permissible until judgment is set aside or vacated." J. G. through Grimes v. Bimestefer, No. 21-1194, 2022 WL 2965794, at *7 (10th Cir. July 27, 2022) (unpublished) (quoting The Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1087 (10th Cir. 2005)). Here, judgment has not yet been entered. The court notes that unpublished decisions are cited for persuasive value. Fed. R. App. 32.1; DUCivR 7-2(a)(2).

delay, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." Cvent, Inc. v. RainFocus, Inc., No. 2:17-cv-00230, 2018 WL 4290399, at *2 (D. Utah Sept. 7, 2018) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); see Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993) (listing when refusing leave to amend is justified). A court must state its reasons if it refuses leave to amend. Stafford v. Saffle, 34 F.3d 1557, 1560 (10th Cir. 1994). So, the court explains its decision refusing Ms. Hardy leave to amend below.

    b.  Undue Delay.

Ms. Hardy filed her motion to amend nearly 16 months after filing her original complaint. "Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial" due to undue delay. Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting State Distribs., Inc. v. Glenmore Distilleries Co., 738 F.2d 405 (10th Cir. 1984)). Courts must consider the adequacy of the reasons a plaintiff provides for their delay. Cohen v. Longshore, 621 F.3d 1311, 1314 (10th Cir. 2010). But denial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay. Zisumbo v. Ogden Reg'l Med. Ctr., 801 F.3d 1185, 1195 (10th Cir. 2015) (quoting Minter v. Prime Equip. Co., 451 F.3d 1196, 1205–06 (10th Cir. 2006)).

Farmers argues that leave to amend should be denied because of undue delay. (Opp. Mot. File TAC 30, ECF No. 34). Ms. Hardy did not file a reply to rebut this point. Her motion to amend is similarly unhelpful. It does not explain why Ms. Hardy failed to include the facts on which the proposed amendment is based in her original complaint. It also does not contest that she knew or should have known these facts when the original complaint (ECF No. 2) was filed, or when her First Amended Complaint (ECF No. 3), or her Second Amended Complaint (ECF

3

No. 9), were filed. It merely says that in the brief she filed in opposition to Farmers' Motion to Dismiss, she "conceded that [the SAC] had various pleading deficiencies" and that an "efficient resolution might be" to allow her to amend her complaint. (Mot. File TAC 2, ECF No. 26). During the hearing on the pending motion, Ms. Hardy's counsel explained the late timing of amendment by acknowledging that the changes in the TAC were made once it became clear that aspects of the complaint needed refinement. This is not an adequate explanation for delay, making the delay undue. See Smith v. Aztec Well Servicing Co., 462 F.3d 1274, 1285 (10th Cir. 2006) (finding no abuse of discretion where court disallowed amendment where plaintiffs offered no explanation for 14-month delay in amending other than "dubious assertion" that they did not know amendment would be necessary until pre-trial conference); cf. Woolsey v. Marion Lab'ys, Inc., 934 F.2d 1452, 1462 (10th Cir. 1991) (affirming court's disallowing of amendment where counsel explained delay in amending was because he identified new cause of action while researching). Ms. Hardy had ample opportunity to provide an excusable cause for the delay, but the reasons she provided are inadequate. Consequently, denial of leave to amend is appropriate.

      c. Undue Prejudice.

Prejudice under Rule 15 means undue difficulty defending against a lawsuit due to the other party's change in tactics or theories. See Cvent, Inc., 2018 WL 4290399, at *3 (citing Texas Instruments, Inc. v. BIAX Corp., 2009 WL 3158155, *2 (D. Colo. Sept. 28, 2009)). This most often occurs when sought-after amendments arise out of a subject matter different from what was laid out in the complaint and raise new factual issues. Id. These factors are not present here. As a result, denial of leave to amend based on undue prejudice is inappropriate, but lack of prejudice is not dispositive of the amendment issue. Woolsey, 934 F.2d at 1462 ("prejudice may be one ground justifying a denial of leave to amend, [but] such a showing is not necessary.").

4

d.  Futility of Amendment.

"Courts 'may refuse to allow leave to amend pleadings when the proposed changes would be futile.'" Nicholas & Co. v. Symetra Life Ins. Co., No. 2:13-cv-1114, 2015 WL 12030092, at *6 (D. Utah Nov. 4, 2015) (citing Reagan v. Bankers Trust Co., 863 F. Supp. 1511, 1518 (D. Utah 1994)). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason." Cvent, Inc., 2018 WL 4290399, at *3 (quoting Watson ex rel. Watson v. Beckel, 242 F.3d 1237, 1239–40 (10th Cir. 2001)) (cleaned up). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." Gohier v. Enright, 186 F.3d 1216, 1218 (10th Cir. 1999). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Because Ms. Hardy's sex discrimination claim is not viable,[4] at issue is whether the TAC states a claim for retaliation. The court previously dismissed this claim as time-barred, to the extent it was based on retaliation that occurred before August 19, 2020.[5] (Order 4–6, ECF No. 25). To the extent it was based on retaliation that occurred between that date and June 15, 2021, the court dismissed the retaliation claim for failure to state a claim. Id. at 6–10.

i.  Farmers' Conduct that Occurred Before the Look Back Period.

The continuing violation doctrine does not apply to retaliation claims. See Salemi v. Colo. Pub. Employees' Ret. Ass'n, 747 F. App'x 675, 688 (10th Cir. 2018) (unpublished) (citing

---

[4] During the May 2, 2023 hearing on the pending motion, Ms. Hardy's counsel agreed that the sex discrimination claim is time barred. The court credits this representation, agrees the sex discrimination claim is not viable, and does not consider that claim in this Order.
[5] These dates reflect the 300-day "look-back" period, which is further discussed below.

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002)). This means a plaintiff fails to timely exhaust her administrative remedies relative to an incident of retaliation that occurs more than 300 days before she files a charge with the EEOC. Id. Ms. Hardy filed her charge with the EEOC on June 15, 2021. (TAC ¶ 4, ECF No. 26-2). The look-back period began on August 19, 2020, meaning Ms. Hardy failed to timely exhaust her administrative remedies relative to incidents of retaliation that occurred before that date. The court previously dismissed this retaliation claim as it relates to retaliatory conduct that occurred before the look back period. (Order 6, ECF No. 25). Nothing in Ms. Hardy's TAC changes the court's analysis on this issue.[6]

    ii. Farmers' Conduct that Occurred During the 300-Day Look Back Period.

During the hearing on the motion at issue, Ms. Hardy's counsel conceded that her sex discrimination claim is time barred. But this does not mean her retaliation claim must also fail. McDonald v. Corrs. Corp. of Am., 181 F. Supp. 2d 1274, 1281 (D.N.M. 2002) (observing

---

[6] "Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be without prejudice." Gallagher v. Shelton, 587 F.3d 1063, 1068 (10th Cir. 2009) (citing Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1139 (10th Cir. 2005)). This is because failure to exhaust is often a temporary, curable, procedural flaw. Fitzgerald, 403 F.3d at 1139. Accordingly, Ms. Hardy's discrimination claim was dismissed without prejudice. (Order 11, ECF No. 25). Ms. Hardy's retaliation claim was similarly dismissed without prejudice, to the extent it relates to adverse employment actions that occurred during the look-back period. Id. But the court dismissed the retaliation claim with prejudice as it relates to conduct that occurred before August 19, 2020. Id. It dismissed this component of Ms. Hardy's retaliation claim with prejudice because any attempt by Ms. Hardy to refile her retaliation claim after the court's order of dismissal was issued would be incurably out of time about conduct that occurred before August 19, 2020. See Jenkins v. Educ. Credit Mgmt. Corp., 212 F. App'x 729, 733 (10th Cir. 2007) (unpublished) (affirming dismissal with prejudice of a Title VII claim for failure to exhaust); Valdez v. Tyco Integrated Sec. LLC, No. 2:16-CV-00016, 2016 WL 1595361, at *3 (D. Utah Apr. 20, 2016) (dismissing, with prejudice, age and pay discrimination claims because of failure to exhaust where due to statutory time limits plaintiff could not remedy exhaustion issue); Kincaid v. Unified Sch. Dist. No. 500, Kansas City, Kansas, 572 F. Supp. 3d 1081, 1099 n.10 (D. Kan. 2021) (quoting Knight v. Mooring Cap. Fund, LLC, 749 F.3d 1180, 1190 (10th Cir. 2014)) (dismissing Title VII claim with prejudice and observing "dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

plaintiff's retaliation claim was not dependent on viability of her discrimination charge). To establish a prima facie case of retaliation Ms. Hardy must show (1) she engaged in protected opposition to discrimination; (2) she suffered a materially adverse employment action; and (3) there is a causal connection between her opposition and the employer's adverse action. Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1181 (10th Cir. 2006); Kincaid, 572 F. Supp. 3d at 1097 (citing Lounds v. Lincare, Inc., 812 F.3d 1208, 1233–34 (10th Cir. 2015)) (applying same three-part standard at motion to dismiss stage). To sufficiently state a plausible claim for relief, Ms. Hardy "is not required to set forth a prima facie case for each element, [but] she is required to set forth plausible claims." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012).

### A. Prong (2): Materially Adverse Employment Action.

In the TAC, as in the SAC, Ms. Hardy adequately alleges that she suffered materially adverse employment action—she was fired. See Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1202 (10th Cir. 2008). This establishes prong (2), at least about Ms. Hardy's firing.

There is only one other potentially adverse action that occurred within the lookback period. In "mid-2020" Ms. Hardy's manager Tanya "began to remove work assignments from [Ms. Hardy's] responsibilities although [Ms. Hardy's] colleagues were still performing these responsibilities." (TAC ¶ 69, ECF No. 26-2). Ms. Hardy alleges this was "an apparent effort to remove [Ms. Hardy] from her job." Id. However, it is equally plausible that this decrease was favorable rather than adverse because Ms. Hardy also alleges that a December 2017 increase in her workload was adverse. See id. ¶¶ 38, 98. Moreover, without any indication of the type or volume of assignments reassigned, this allegation does not rise to the level of conduct that would plausibly dissuade a reasonable employee from engaging in protected conduct. See Somoza v.

7

Univ. of Denver, 513 F.3d 1206, 1214 (10th Cir. 2008). While her firing was materially adverse, Ms. Hardy has not adequately alleged that the reassignments were a materially adverse action.

B. Prong (1): Protected Opposition.

The court previously dismissed Ms. Hardy's retaliation claim on protected opposition (prong (1)) grounds. It said complaining of "harassment" is not enough to constitute engaging in protected activity. (Order 10, ECF No. 25). "'Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by' employment discrimination statutes." Id. (quoting Hinds, 523 F.3d at 1203). To address this point, the TAC clarifies that Ms. Hardy indicated to Farmers that that she was being harassed by her Farmers coworkers, and that she told Farmers that she was being treated differently than her male colleague Jeremy. (TAC ¶ 56, ECF No. 26-2 (modifying language used in SAC to describe event)). The court is dubious that this remedies the issue, and that the TAC satisfies the protected opposition prong. However, the court does not need to reach the prong (1) question, because even if Ms. Hardy did engage in protected opposition, her claim fails under prong (3) of the retaliation analysis—causation.

C. Prong (3): Causal Connection Between (1) and (2).

"To establish a causal connection, a plaintiff must 'present evidence of circumstances that justify an inference of retaliatory motive.'" Bekkem v. Wilkie, 915 F.3d 1258, 1271 (10th Cir. 2019) (quoting Ward v. Jewell, 772 F.3d 1199, 1203 (10th Cir. 2014)) (internal quotation marks omitted). "If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection." Id. (quoting Ward, 772 F.3d at 1203). Generally, courts measure this time "period as running from the date of the protected activity to the date of the adverse action." Conroy v. Vilsack, 707 F.3d 1163, 1182 (10th Cir. 2013). This "allows [courts]

8

to more accurately assess whether an employer's adverse action likely was motivated by the employer's protected activity (that is, whether the protected activity likely caused the adverse action)." Id.  The Tenth Circuit has "never established a precise temporal line" to determine if the requisite proximity is present to establish causation.  Id. at 1181.  "However, a three-month gap between protected activity and an adverse action is too long to support an inference of causation on its own."  Bekkem, 915 F.3d at 1271 (quoting Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) (indicating period of six weeks gives rise to rebuttable inference of causal connection, but period of three months does not)).  Where a gap of more than three months has occurred, "to establish that her protected activity was a but-for cause of the adverse employment action," a plaintiff must allege other facts that would justify an inference of retaliatory motive.  See id. (quoting Ward, 772 F.3d at 1203) (internal quotation marks omitted).

Here, the period between the allegedly protected activity and the date of the adverse action is ten-and-a-half months long.  Ms. Hardy alleges "she engaged in a protected activity when . . . she complained to Tanya and Human Resources of harassment and discrimination . . . [and] by reporting and complaining about coworkers."  (TAC ¶¶ 94–95, ECF No. 26-2).  Ms. Hardy's last alleged complaint "about some employees' behaviors towards her regarding the security access badge policy" was on or about February 13, 2020.  Id. ¶ 66.  She received notice that she was going to be fired on January 21, 2021.  Id. ¶ 73.

Additionally, Ms. Hardy has not alleged that she suffered a pattern of retaliation in the months leading up to her firing which could, despite the time-lag, plausibly justify an inference of retaliatory motive.  See Marx v. Schnuck Markets, Inc., 76 F.3d 324, 329 (10th Cir. 1996) (citing Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 377 n.4 (6th Cir. 1984)) ("the phrase 'closely followed' must not be read too restrictively where the pattern of retaliatory

conduct begins soon after the [protected action] and only culminates later in actual discharge."); Lucero v. N.M. Lottery, 685 F. Supp. 2d 1165, 1183 n.9 (D.N.M. 2009) ("Certainly retaliatory actions that occur months after protected conduct can be actionable if they are part of a pattern of retaliation. . . . [But where a court finds] no instances of retaliation leading up to the [adverse action, there is] therefore, no pattern."). Ms. Hardy's last day of work at Farmers was on March 22, 2021. (TAC ¶ 76; ECF No. 26-2). She was notified that she was going to be fired on January 21, 2021. Id. ¶ 73. The final non-firing adverse employment actions—which would potentially show a pattern of retaliation—occurred in "mid-2020" and July 2020. Id. ¶¶ 68, 69.[7] Even if these actions were adverse enough to be relevant to the retaliation analysis, they occurred about six months before Ms. Hardy was notified that she would be fired. They are too temporally remote to be part of a "pattern of retaliation" that occurred "leading up to" the firing.

As stated above, to survive a motion to dismiss, while a "Plaintiff is not required to set forth a prima facie case for each element, she is required to set forth plausible claims." Khalik, 671 F.3d at 1193. A claim is facially plausible when the complaint contains factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1235 (10th Cir. 2013). The court must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., 771 F.3d 697, 700 (10th Cir. 2014). To set forth her retaliation claim, the allegations in Ms. Hardy's complaint must indicate it is plausible that Ms. Hardy's protected activity was a but-for cause of

---

[7] In "mid-2020" Ms. Hardy's manager began to remove work assignments from Ms. Hardy, "in an apparent effort to remove her from her job." Id. ¶ 69. As noted above, it is unclear that this decrease was adverse, because it followed an increase in workload, which Ms. Hardy also described as adverse. Regardless, at about the same time, in July 2020, Ms. Hardy alleges she received an unfair performance review, which is obviously not favorable. Id. ¶ 68.

her firing.  The gap between protected activity and adverse action is too long to support an inference of causation alone.  And Ms. Hardy fails to support this inference by way of factual content that allows the court to draw a reasonable inference of causation.

Ms. Hardy supports her contention that her protected activity was the but-for cause of her firing, and that the staffing reductions excuse given to her as the cause of her firing was pretextual, by alleging the following facts:

> [1] the significant staffing reductions already implemented company wide and within [Ms. Hardy]'s operating zone, [2] the declarations by Tanya that the outcome of the voluntary separation program had sized the company 'just right,' and that [Ms. Hardy] would have more responsibility moving forward, and [3] the announcement of hiring addition [sic] staff in property claims.

(TAC ¶ 79; ECF No. 26-2).  She also argues that she "worked hard to be an exceptional employee and [had] performed all her job duties faithfully and with professionalism."  Id. ¶ 77.

Assuming these allegations are true and construing them in the light most favorable to the plaintiff, this additional evidence of causation is unpersuasive.  It does not allow the court to draw a reasonable inference of causation.  First, the significant staffing reductions implemented company-wide and within Ms. Hardy's operating zone establish that Farmers was actively cutting claims associates like Ms. Hardy.  Id. ¶¶ 11, 71.  That others in the same role as her were fired at the time she was undermines her pretext argument.  It does not support a reasonable inference that engaging in protected activity was a but-for cause of her firing, rather it lends support to the opposite inference: that Ms. Hardy was let go as part of the broad reduction in Farmers' workforce that Ms. Hardy admits was occurring around that time.

Second, Tanya's representation to Ms. Hardy that Farmers' voluntary separation program—which it had implemented to achieve a reduction in force—"sized the company 'just right' and that the company was going to be moving forward with the remaining staff," also cuts

11

against Ms. Hardy's pretext argument.  (See TAC ¶ 70, ECF No. 26-2).  The gravamen of the complaint is that Ms. Hardy engaged in protected activity for years by complaining to her superiors at Farmers about coworker "harassment."  She alleges that because of these complaints Tanya treated her unfairly and engaged in "apparent effort[s] to remove her from her job."  E.g., id. ¶¶ 68–69.  But the "just right" statement undercut Ms. Hardy's ability to use the reduction in force as pretext.  This is also true about Tanya's statement about the future responsibilities Ms. Hardy would have at Farmers.  Although the court assumes these allegations are true, the inference Ms. Hardy asks the court to draw from them is implausible.  Specifically, it is implausible that Tanya would make these representations to Ms. Hardy while simultaneously planning to use those same reductions as cover for her retaliation against Ms. Hardy.  It is not reasonable to infer this supports causation.

       Third, Ms. Hardy alleges that Farmers' increasing in staffing for "property claims field zones" near the end of her 60-day notice period, and its refusal to offer her any of these positions, shows pretext.  But in the TAC Ms. Hardy is only described as a "claims associate."  Id. ¶ 11.  There is no indication that a "property claims field zone"-related position would have been appropriate for her qualifications or skill set.  Farmers choosing not to hire her into such a position does not support a plausible inference of pretext, and it does not plausibly support the inference that her protected activity was a but-for cause of the adverse employment action.

       Ultimately, Ms. Hardy's additional evidence of, and allegations related to, causation are unpersuasive.  Even if she engaged in protected activity, the allegations in the TAC do not support a plausible inference that she was fired because she engaged in protected activity.  As a result, Ms. Hardy has failed to allege a plausible claim for retaliation that would survive a motion to dismiss, and amending her complaint in the manner she proposes would be futile.

**ORDER**

Because of undue delay and futility of amendment, the court DENIES Ms. Hardy's Motion for Leave of Court to File Third Amended Complaint. (ECF No. 26). The court DISMISSES this case without prejudice, except for Ms. Hardy's retaliation claim as it relates to adverse employment actions that may have occurred before the 300-day look-back period, which is dismissed with prejudice.

DATED this 26th day of June, 2023.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge